Lloyd T. DANIELSEN, et al., Appellants,

v.

**BURNSIDE–OTT AVIATION TRAINING CENTER, INC., et al.**

No. 90–5304.

United States Court of Appeals, District of Columbia Circuit.

Argued May 2, 1991.

Decided Aug. 16, 1991.

---

Charles E. Raley, with whom James E. Phillips was on the brief, for appellants.

Richard McMillan, with whom Scott L. Winkelman was on the brief, for appellee Dyncorp.

Jerrold Ganzfried, with whom Harvey G. Sherzer was on the brief, for appellees UNC Inc., UNC Support Services, and Burnside–Ott Aviation Training Center, Inc.

William Fitzhugh Fox, Bruce C. O'Neil, and Diane Slomowitz entered appearances for appellees William V. Ott, Robert C. Ott, et al.

Before EDWARDS, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellants, employees of service corporations contracting with the United States, brought suit against their employers and others in a five-count complaint alleging four claims for relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and a pendent common law fraud claim. We re-view the judgment of the United States District Court for the District of Columbia granting a motion to dismiss all counts. The District Court held that the facts alleged in the purported RICO actions fell within the Service Contract Act, 41 U.S.C. § 351 ("SCA"), and that the administrative remedy provided by that Act was an exclusive one, barring any private civil action. As this ruling left the court without jurisdiction over the pendent claim, the court dismissed the entire complaint. Because we agree with the trial judge that the remedy provided in the SCA is exclusive, and because we further conclude that the complaint states no claim for which relief can be granted under RICO, we affirm.

## I. BACKGROUND

### A. The Statutory and Regulatory Framework

Our disposition of this appeal involves the construction of two largely unrelated statutory schemes: the Service Contract Act, 41 U.S.C. § 351, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968. We begin with a brief overview of each statute and the regulations promulgated pursuant to the SCA to provide an understanding of our analysis.

#### 1. The Service Contract Act

In 1965, prior to the enactment of the SCA, some statute establishing labor standards covered each major category of federal contracts except service contracts. The earliest example of this type of legislation is the Davis–Bacon Act, 40 U.S.C. § 276, et seq. Since 1931, that Act, though amended several times, has governed the rate of wages for laborers and mechanics working under federal government contracts "for construction, alteration and/or repair ... of public buildings or public works." 40 U.S.C. § 276a(a). It provides that advertised specifications for each such contract, in excess of a statutory minimum dollar amount of $2,000, shall contain a minimum wage provision based upon the Secretary of Labor's determination of

wages "prevailing for the corresponding classes of laborers and mechanics" in the area in which the work is to be performed. *Id.* Since 1936, the Walsh–Healy Public Contracts Act has provided similar protection to employees of contractors under government supply contracts of $10,000 or more. 41 U.S.C. §§ 35–45 (1988).

In 1965, Congress determined that "the service contract is the only remaining category of Federal contracts to which no labor standards protection applies." S.Rep. No. 798, 89th Cong., 1st Sess. 1 (1965), U.S.Code Cong. & Admin.News 1965, p. 3737. To correct this perceived omission, Congress enacted the McNamara–O'Hara Service Contract Act, a labor standards statute applicable to service contracts. *See* 41 U.S.C. §§ 351–358 (1988). That Act requires every federal government contract exceeding $2,500 (with exceptions not relevant here), "the principal purpose of which is to furnish services ... through the use of service employees," to contain minimum wage provisions for each class of service employees in the performance of the contract. 41 U.S.C. § 351(a). More specifically, the SCA provides that contracts and bid specifications must contain "(1) a provision specifying the minimum monetary wages to be paid the various classes of service employees" and "(2) a provision specifying the fringe benefits to be furnished the various classes." 41 U.S.C. § 351(a)(1) and (2). As to each such provision, the statute requires the Secretary of Labor to make a determination of the applicable minimum wages and fringe benefits based on prevailing rates in the locality of the performance of the contract. *Id.*

In pursuance of her duties under the statutory scheme, the Secretary of Labor has promulgated an extensive body of regulations. The whole of Part 1 of Title 29 of the Code of Federal Regulations and Appendices A–C thereto set the "Procedures for Predetermination of Wage Rates." 29 C.F.R. §§ 1.1–1.9. This part applies to the SCA as well as Davis–Bacon, Walsh–Healy, and 55 other statutes listed in Appendix A to the regulations, all of which require the determination of minimum wages for the protection of workers under federal or federally assisted contracts. Among other things, the regulations in Part 1 provide for a procedure under which the contracting federal agency requests from the Secretary a determination of prevailing wages in the locality where the work will be performed.

Section 1.6 sets forth in detail (almost three pages, two columns each) the use and effectiveness of the wage determinations. Section 1.8 provides the procedure for any interested party to seek reconsideration of a wage determination by the Administrator of the Wage and Hour Division, Employment Standards Administration of the Department. Section 1.9 provides for an appeal from the Administrator's decision to the Wage Appeals Board. Sections 4.50–4.55 review the methodology by which the Administrator makes the wage and fringe benefit determinations pursuant to §§ 1.1–1.7 and reconsiders the same under § 1.8. Several other subparts and sections of Title 29 C.F.R. apply to the relevant wage determinations, including §§ 8.2–8.6 concerning the review of wage determinations and §§ 8.7–8.9 providing further procedures for appeal of determinations.

The greater portion of Part 7 of Title 29 of the C.F.R., §§ 7.1–7.8 and §§ 7.11–7.18, governs the procedure and methodology for review by the Wage Appeals Board. Also, subpart C of subtitle A of 29 C.F.R. §§ 4.101–4.156 governs the "application of the McNamara–O'Hara Service Contract Act;" subpart D, §§ 4.159–4.186, governs the compensation standards; and subpart E, §§ 4.187–4.191, governs enforcement, including: § 4.187, recovery of underpayments; § 4.188, debarment; § 4.189, administrative proceedings relating to enforcement of labor standards; § 4.190, contract cancellation; and § 4.191, complaints and compliance assistance.

All contracts involved in the present litigation are within the scope of the SCA and the implementing regulations.

### 2. The Racketeer Influenced and Corrupt Organizations Act

Congress enacted the RICO statute, 18 U.S.C. §§ 1961–1968, as Title IX of the

Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 922 (1970) ("OCCA"). After extensive hearings and investigations presided over by Senator McClelland, a principal sponsor of the legislation, Congress in the OCCA sought to combat criminal organizations at large in the American commercial republic. Title IX, RICO, was designed specifically to remove the tentacles of organized crime from legitimate business. *See generally* Lynch, *RICO: The Crime of Being a Criminal*, 87 COLUM.L.REV. 920, 972–73 (1987). As an administration official testifying in support of the adoption of RICO—with the blessings of Senator McClelland—stated during hearings on the bill, RICO was drafted with the intention of providing "devices [that] can prove effective in cleaning up organizations corrupted by the forces of organized crime." 116 Cong.Rec. 18,939–40 (1970).

The principal operative section of RICO, 18 U.S.C. § 1962, creates four new federal crimes. While we will examine the details of each offense as it relates to the allegations in the present case in Part II of this opinion, the following provides a brief review of § 1962: Subsection (a) renders unlawful the acquisition of any interest in or the establishment or operation of an "enterprise" (as defined in the statute) with the proceeds of a "pattern of racketeering activity." 18 U.S.C. § 1962(a). Subsection (b) outlaws acquiring or maintaining an interest in or control of an enterprise "through a pattern of racketeering activity." *Id.* § 1962(b). Subsection (c), the subsection most litigated, outlaws the conduct of affairs of an enterprise (under circumstances outlined in the statute) "through a pattern of racketeering activity." *Id.* § 1962(c). Subsection (d) adds nothing substantive to the law. Rather, it makes it unlawful to conspire to violate any of the preceding three sections. *Id.* § 1962(d).

The alleged applicability of RICO to the present case comes about through 18 U.S.C. § 1964, entitled "Civil Remedies." This section provides in relevant part:

> [A]ny person injured in his business or property by reason of a violation of sec-

tion 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c).

Each offense under § 1962, and therefore each civil claim under § 1964(c), requires as an element "a pattern of racketeering activity." Section 1961, the definitional section of RICO, states that "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Section 1961(1) defines "racketeering activity" by referring to a long list of state and federal criminal offenses.

As will be set forth more fully in Part II of this opinion, plaintiffs' complaint alleges purported claims under each of the subsections of § 1962 for the civil remedy provided in § 1964.

### B. *The History of the Litigation*

#### 1. Factual Allegations

Appellants are the three named plaintiffs in the District Court action suing individually and as representatives of a class of "all other persons ... who, during the period of approximately October 1, 1981 to the present, were or are service employees of either Dyncorp, Burnside–Ott, UNC Support, or UNC." Appellants brought suit against five corporations: (1) Burnside–Ott Aviation Training Center, Inc.; (2) UNC Services, a wholly owned subsidiary of UNC, Inc.; (3) UNC, Inc.; (4) Dyncorp (formerly Dynalectron Corp.); and (5) BOC of Miami, Inc.; as well as four natural persons: William V. Ott, Robert C. Ott, Donald Burnside, and Marjorie Burnside, each sued "individually and as trustee to BOC of Miami, Inc.," and all designated in the complaint as "the directors of BOC, and ... upon information and belief ... shareholders in Burnside–Ott prior to its sale to UNC, Inc." Appellants' Complaint at 7, *Danielsen v. Burnside–Ott Aviation Training Center, Inc.*, 746 F.Supp. 170 (D.D.C.1990). For good measure, the com-

plaint adds ten more defendants designated as "John Doe Defendants One through Ten," described in the complaint only as "unknown present or former employees, officers or directors of Burnside–Ott, UNC Support, UNC, Dyncorp, and/or BOC who have engaged in interstate commerce through racketeering activities on behalf of themselves and [all the named corporations]." *Id.*

The factual allegations concern events surrounding five maintenance contracts, each of which the Department of the Navy awarded to one of the corporate defendants, and some of which one defendant obtained and subsequently assigned to another. According to the allegations of the complaint, *see Danielsen v. Burnside–Ott Aviation Training Center, Inc.*, 746 F.Supp. 170 (D.D.C.1990), before 1981, the Navy performed its own maintenance service on the aircraft covered by the five contracts. In September of 1981, however, the Navy contracted out the maintenance services for its TH–57 helicopters to Burnside–Ott Aviation Training Center, Inc.

Burnside–Ott performed the maintenance under the first TH–57 contract until December 1, 1984. From December 1, 1984 until December 1, 1985, an unrelated co-defendant, Dynalectron Corporation held and performed the second TH–57 contract. On December 1, 1985, BOC of Miami was awarded the third TH–57 maintenance contract through the competitive bidding process. On October 31, 1986, BOC of Miami assigned that contract to the Burnside–Ott Aviation, Inc., subsidiary of UNC Support Services, Inc., which continued to perform the third TH–57 contract at all other times relevant to this opinion. In the meantime, defendant Dynalectron, now known as Dyncorp, obtained maintenance contracts for the Navy's T–2 and T–34/44 fixed-wing aircraft on February 4, 1985.

The litigation in this case concerns all five of the above contracts, that is, the three TH–57 maintenance contracts and the two contracts for maintenance of the T–2 and T–34/44 fixed-wing aircraft. The contracts are governed by the SCA, as "the principal purpose of ... [each] is to furnish services in the United States through the use of service employees." Pursuant to the SCA, the contracts included provisions specifying "minimum monetary wages to be paid to various classes of service employees" involved in the performance of the contracts. 41 U.S.C. § 351. In keeping with the implementing regulations, the contracts further contained provisions classifying employees in positions not listed on the wage determination in such a fashion "as to provide a reasonable relationship (*i.e.*, appropriate level of skill comparison) between such unlisted classifications and the classifications listed in the wage determination." 29 C.F.R. § 4.6(b)(2)(i). The phrase "wage determination" in § 4.6(b)(2)(i) refers back to the determination made by the Secretary as specified in such determination attached to the contract, pursuant to § 4.6(b)(1).

As we noted above, the regulations provide the means for "any interested person" to challenge such a wage determination and to obtain a reconsideration from the Administrator of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor. 29 C.F.R. § 1.8. In the present case, employees who ultimately became plaintiffs made such challenges to classifications under the TH–57 contracts. Based on those challenges, the Department of Labor investigated the payment practices of the contractors on the TH–57 contracts. In December of 1986, the Administrator concluded that the third TH–57 contract violated the SCA, inasmuch as workers classified as "technicians" should have been classified as "aircraft workers" and paid the correspondingly higher wage. The Navy requested reconsideration by the Administrator. However, on December 4, 1987, the Administrator rejected the Navy's position and reaffirmed the earlier decision. Some of the defendants herein appealed the Administrator's decision to the Deputy Secretary of Labor pursuant to 29 C.F.R. § 8.7(b). At the time of the filing of the present litigation, the Deputy Secretary had ruled adversely to the contractors on one contract but held

the matters at issue on the other contracts.[1]

The other two service contracts, those covering the T–2 and T–34/44 aircraft, also generated administrative review. As to each, Dyncorp submitted performance requests proposing rates for classifications not contained in the wage determinations. The Administrator issued a ruling concerning classifications for both contracts on April 3, 1987. Again, a dispute arose over the classification of "technicians" proposed by the contractor for service employees performing aircraft maintenance. The Administrator increased wage rates for several classifications and directed Dyncorp to apply the conformed wage rates effective to the commencement date of each contract. On May 28, 1987, Dyncorp petitioned the Board of Service Contract Appeals for review of the Administrator's determination. The Navy petitioned to intervene in the appeal in support of Dyncorp's position and opposed the Administrator's proposed rates. At the time of the filing of the litigation in the District Court and the issuance of the District Court's opinion, the final decisions on the appeal in those matters had not yet been issued.

### 2. The Claims for Relief

On November 17, 1989, appellants commenced the present action.[2] Their complaint contains five counts. Each of the first four counts asserts a claim under one of the subsections of 18 U.S.C. § 1962 and each seeks damages equal to three times the amount of backpay wages and other benefits payable by defendants under the Department of Labor's decisions and determinations relating to the service contracts, decisions and determinations not yet concluded at the filing of the action. As to each count, appellants claim that the "pattern of racketeering activity" consisted of "at least two acts of federal mail and wire fraud." Appellants' Complaint at 35–45. The alleged mail fraud and wire fraud consisted of entering contracts with improper classifications and using the mails in furtherance of the contract. Count V asserts a common law claim for "fraud and deceit" and seeks to recover damages equal to the difference between wages and fringe benefits defendants paid plaintiffs under the five contracts and the wages and benefits plaintiffs "would have received and accepted had the Wage Determinations incorporated in said contract [sic] been disclosed." Id. at 45. Plaintiffs also sought costs, including attorney fees, incurred in bringing the action. Id. at 46.

Defendants moved to dismiss all counts for failure to state claims upon which relief could be granted. On August 27, 1990, the District Court filed a memorandum explaining its reasoning that the SCA had "preempted" this area of law to the exclusion of RICO so that the first four counts failed to state claims upon which relief could be granted. Danielsen, 746 F.Supp. at 170. As the jurisdiction over Count V was purely pendent, the District Court dismissed it as well. Appellants then filed this appeal.

## II. ANALYSIS

### A. The Exclusive Remedy

■ We agree with the District Court that the statutory scheme for administrative relief set forth by Congress in the SCA leaves no room for a RICO action on the present allegations. We have a slight semantic difficulty with the use of the word "preemption" for the concepts we discuss

---

1. It appears from statements in the briefs before us that the Deputy Secretary may have ruled on the other matters since the filing of this appeal. As this is of no consequence to our decision, we will not pursue the inquiry further.

2. On the same date, appellants commenced a companion suit against the Secretary of Labor and the Secretary of the Navy seeking a writ of mandamus compelling the departments to collect back wages from the same defense contractors sued in this litigation alleging the same SCA violations. The District Court dismissed that action on August 27, 1990, for failure to state a claim upon which relief could be granted. Danielsen v. Dole, 746 F.Supp. 160 (D.D.C.1990). By order of January 3, 1991, a panel of this Court granted summary affirmance. Danielsen v. Dole, No. 90–5302, 1991 WL 2248 (D.C.Cir. Jan. 3, 1991).

in this section. We recognize that this use of "preempt" is not inconsistent with uses of that word in the labor law context. For example, in *Amalgamated Association of Street Employees, etc. v. Lockridge*, 403 U.S. 274, 276, 91 S.Ct. 1909, 1913, 29 L.Ed.2d 473 (1971), the Supreme Court held that the NLRA "preempts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act." Most recent use of the word in federal jurisprudence, however, generally has been in the context of the "preemption doctrine," which recognizes that "certain matters are of such a national, as opposed to local, character that federal laws *preempt* or take precedence over state laws." *Black's Law Dictionary* 1060 (West 5th ed. 1979) (emphasis added). As the present case raises a narrower question, our task is more accurately described as determining whether there is a statutory provision of an exclusive remedy rather than the preemption of an entire field. Therefore, while we agree with the District Court in its conclusion, we differ in terminology.

Whatever the analysis is called, the question remains essentially: Does violation of the SCA give rise to a private civil action under RICO in addition to the remedies provided under the SCA? We agree with the District Court that it does not.

While prior litigation has not focused on RICO, other circuits previously have held that no private civil action will lie under the SCA. The Ninth Circuit faced the question in *Miscellaneous Service Workers, etc. v. Philco–Ford Corp.*, 661 F.2d 776 (9th Cir. 1981) ("*MSW*"). Plaintiffs in that case, as here, sued a service contractor alleging violations of the SCA similar to those alleged in the present case. That circuit noted that "the question whether a private right of action is conferred by a federal statute is essentially one of interpreting congressional intent." *Id.* at 780 (citations omitted). The *MSW* court then applied the four-fold test drawn from *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). That test asks:

1. Is the plaintiff one of a class for whose especial benefit the statute was created?

2. Is there any indication of a legislative intent to fashion such a remedy?

3. Is it consistent with the underlying legislative scheme to apply such a remedy?

4. Is the cause of action one traditionally relegated to state law, so that an implied federal cause of action would be inappropriate?

*MSW*, 661 F.2d at 780 (internal quotations omitted). While noting that the service workers' complaint passed the first test, the Ninth Circuit determined that it failed the next two. As to the second test, "[p]laintiffs confuse an intention to confer rights—which Congress does repeatedly through legislation—with the specification of remedies for the protection of those rights." *Id.* Nothing in the language of the SCA provides any indication that Congress intended to create a private cause of action.

Applying the third test, the Ninth Circuit saw it as quite plain that the implication of a private right of action would be totally inconsistent with Congress's intent; indeed, it would be so inconsistent with the legislative scheme underlying the right as to be unthinkable. As the Ninth Circuit stated, and as our discussion in Section IA, *supra*, reveals, "the Act envisions a comprehensive administrative rubric for the protection of federal service workers." *Id.* The Ninth Circuit then reasoned that where Congress has established such a regulatory scheme, "the specification thereof normally excludes duplicative judicial jurisdiction." *Id.* at 781 (citations omitted). This is especially true in a scheme such as the SCA where Congress provided the statutory right for a limited and governmental cause of action for underpayment. The SCA provides:

If the accrued payments withheld under the terms of the contract are insufficient to reimburse all service employees with respect to whom there has been a failure to pay the compensation required pursuant to this chapter, the United States may bring action against the contractor, subcontractor, or any sureties in any court of competent jurisdiction to recover

the remaining amount of underpayments. Any sums thus recovered by the United States shall be held in the deposit fund and shall be paid, on order of the Secretary, directly to the underpaid employee or employees. Any sum not paid to an employee because of inability to do so within three years shall be covered into the Treasury of the United States as miscellaneous receipts.

41 U.S.C. § 354(b).

We agree with the Ninth Circuit that the implication of a private right under the SCA would undercut the specific remedy prescribed by Congress. As that circuit asked, "what plaintiff will pursue his administrative remedies under the Act where more direct and expeditious relief is available in a private suit?" *MSW*, 661 F.2d at 781. How much more the case where plaintiffs couch their complaint in terms of RICO to give them, not a remedy equal to that provided under the SCA, but three times that remedy? How much more still where their attorneys would be extracting their fees not from their clients but from the other side? Thus, the ingenious pleading of the action in RICO terms rather than in straight SCA language cuts against the implication of the right of action rather than in its favor.

Indeed, appellants' invocation of the RICO statute avails them of no meaningful distinction from *MSW*. The factual allegations are precisely the same. To call the violation of the SCA "a pattern of racketeering" does nothing to persuade this Court that Congress intended the SCA to create a private cause of action. As the Ninth Circuit held, no such implication exists. If there is no implied cause of action for damages, how much the less for treble damages? In fact, plaintiffs in *MSW*, while not attempting to assert a claim under RICO, did allege a second cause of action "for deceit and misrepresentation in falsely advising plaintiffs that the SCA did not apply to their contract," *MSW*, 661 F.2d at 777, an alleged deception at least as egregious as picking the wrong classifications, the "racketeering" supposedly underlying the present action.

When the Eleventh Circuit considered an attempted action by a union under the SCA, that court referred to *MSW* as "the Ninth Circuit's in-depth analysis of the SCA, and its correct application of the *Cort* test, fully support[ing] its conclusion that both before and after the 1972 amendments, Congress did not intend to authorize private suits to enforce the Act." *District Lodge No. 166, International Association of Machinists & Aerospace Workers v. TWA Services, Inc.*, 731 F.2d 711, 715 (11th Cir.1984), *cert. denied*, 469 U.S. 1209, 105 S.Ct. 1175, 84 L.Ed.2d 324 (1985). The Eleventh Circuit agreed with the Ninth Circuit's analysis and conclusions; so do we.

Not only is the Ninth Circuit's application of the *Cort* test unassailable as a matter of logic, but its decision in *MSW* is consistent with our own precedent in a distinguishable but closely analogous application of the SCA. In *International Association of Machinists & Aerospace Workers v. Hodgson*, 515 F.2d 373 (D.C.Cir. 1975), a union brought an action challenging the decision of the Secretary not to issue wage determinations for a particular project pursuant to the SCA and seeking to recover damages from a contractor which had entered a contract with the National Aeronautics and Space Administration without such a wage determination. We affirmed the District Court's dismissal of that action in part "because the Act does not provide such a remedy." *Id.* at 379. In so doing, we noted that Congress had amended the SCA in 1972, *see* Pub.L. No. 92–473, to restrict the Secretary of Labor's discretion not to issue a wage determination, but that the amendments "do not create new remedies against contractors." *Id.* at 379 n. 9. While that case is factually distinct from the present one, as it involved allegations of nondetermination rather than misdetermination of classification, the absence of statutory private remedy is no different. In short, by all authority and reason, it is plain that the SCA creates no private remedy.

To frame the action for such remedy in terms of RICO adds nothing. In contending that it does, appellants argue that "the

statute [RICO] itself recognizes that the conduct punished by its provisions also constitute [sic] violations of numerous other federal statutes, and accordingly, the remedy provided in the statute is necessarily and inherently in addition to any other remedy or sanction provided by other statutes." Appellant's Brief at 8. The weakness of this reasoning is apparent. The inarguable fact that a RICO remedy will lie in addition to penalties or remedies provided for one statute or set of statutes does not answer or even bear relevance to the question whether a RICO remedy will lie for the breach of another statute. RICO, in fact, does recite a list of statutes the breach of which will constitute racketeering. *See* 18 U.S.C. § 1961(1). Conspicuously, however, the SCA is not one of those statutes. Thus, we conclude that the District Court was correct in holding that the private civil action, even couched in RICO terms, will not lie for an alleged breach of the SCA.

## B. *The Elemental Failure of the Complaint*

Our confidence in affirming the dismissal of this complaint rests not only on our firm conviction that the SCA affords no private remedy, but also on our conclusion that plaintiffs' complaint does not allege the elements of a RICO claim for relief in any of its counts. We note with reference to all of the four RICO counts that each allegation of the required "racketeering activity" element is suspect for reasons implicit in our prior discussion of the exclusivity of the SCA remedy. Specifically, each count depends on the premise that alleging use of the mail to further an SCA contract activity when an improper wage classification is employed is sufficient to charge mail fraud. We doubt that it is.

True, racketeering activity encompasses "any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud)." 18 U.S.C. § 1961(1). But it is not obvious that to fall short of the contract requirements of the SCA constitutes the "devi[sing] of a scheme or artifice to defraud," 18 U.S.C. § 1961(1), especially given the familiar requirements of the Federal Rules of Civil Procedure, "in all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b).

Furthermore, we question whether appellants come within the RICO requirement that a § 1964(c) plaintiff must be a "person injured in his business or property by reason of a violation of § 1962." While the employees may have been entitled to higher paying job classifications than they received under the defendants' employment schemes, each employee in fact received precisely the compensation bargained for in return for the agreed work. That the employees should have received more pay is a situation redressable under the SCA. The very fact that Congress enacted the SCA with its complex framework for administrative recovery suggests that Congress did not contemplate that violation of the SCA constituted the criminal felony of mail fraud. Although it is not imponderable that Congress would have deemed it both, it would seem likely that either the statute or at least the legislative history would have indicated as much. Nevertheless, even if we assume that racketeering, even a pattern of racketeering, is adequately alleged, all counts still fail. We discuss each count in turn.

### 1. Count I, § 1962(a)

In Count I, appellants attempt to allege a claim for violation of 18 U.S.C. § 1962(a). This section makes it unlawful to use or invest income derived from a pattern of racketeering activity in an enterprise. The civil remedy created by § 1964(c) authorizes recovery only for injury "by reason of" the RICO violation. Therefore, a plaintiff claiming under § 1962(a) must plead and prove that his injury flowed from the defendant's *use* or *investment* of racketeering income. It is not sufficient to allege injury flowing from the predicate acts of racketeering. *See, e.g., Craighead v. E.F. Hutton & Co., Inc.,* 899 F.2d 485, 494 (6th Cir.1990); *Rose v. Bartle,* 871 F.2d 331, 357–58 (3d Cir.1989); *Grider v. Texas Oil & Gas Corp.,* 868 F.2d

1147, 1149–50 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989).

Although there is some contrary authority to the effect that the predicate act injury is sufficient to provide standing to a claimant under § 1962(a), *see, e.g., Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chicago,* 693 F.Supp. 666, 671 (N.D.Ill. 1988), we agree with the majority of courts in holding that "the allegation of income use or investment injury is consistent with both the literal language and the fair import of the language of section 1962(a)." *Rose,* 871 F.2d at 358 (internal signals and citations omitted). Indeed, we find this requirement so consistent with the language and import of the RICO statute that not requiring this allegation would be untenable.

Appellants do not deal with this question in their briefs before this Court. While understandably their initial brief dealt with the grounds for dismissal asserted by the District Court, their reply brief does not respond to appellees' argument that Count I must fail for want of an allegation of use or investment injury. In fact, they reply that "the sole issue presented on appeal on a single ground for dismissal below is a straightforward question of law." (That is, the "legal standard of preemption [to] be invoked in a RICO action such as this case."). Appellants' Reply Brief at 2.

This reply ignores the well-established rule of law that in reviewing the decision of a lower court, an appellate court can affirm a correct decision even if on different grounds than those assigned in the decision under review. *See, e.g., SEC v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943); *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 157–58, 82 L.Ed. 224 (1937). This is especially true where we are reviewing the grant of a motion to dismiss for failure to state a claim upon which relief can be granted, a pure question of law which we review *de novo. Wells v. Walker,* 852 F.2d 368, 370 (8th Cir.1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989); *North Star Int'l v. Arizona Corp.*

*Comm'n,* 720 F.2d 578, 580 (9th Cir.1983). Thus, if appellants have a response to this argument, they would have done well to have asserted it. Apparently they have none.

When questioned at oral argument, appellants' counsel contended that the conduct of the affairs of the enterprise through the alleged pattern of racketeering activity should be sufficient to satisfy the requirements of § 1962(a), not only § 1962(c). If this were so, indeed, if it were true under any theory that a predicate act injury would be sufficient to provide standing to a claimant under § 1962(a), then it would be difficult to understand why Congress enacted § 1962(a). In other words, if allegations sufficient to base a § 1962(c) action meet all the requirements of a § 1962(a) allegation, then why did Congress pass both? We are required to interpret acts of Congress in such a fashion as to give meaning to each word of the statute. *Connecticut Dep't of Income Maintenance v. Heckler,* 471 U.S. 524, 530, 105 S.Ct. 2210, 2213–14, 85 L.Ed.2d 577 (1985); *Consolidated Rail Corp. v. ICC,* 896 F.2d 574, 578 (D.C.Cir.1990). To meet this standard in construing RICO, we must conclude that there is some different requirement for violation of § 1962(a) than for violation of § 1962(c). Accordingly, we must give effect to the words "to use or invest such income." In terms of the civil remedy, the requirement that plaintiff must have suffered injury "by reason of" the violation of § 1962(a) prohibiting use or investment differs from that arising from § 1962(c) prohibiting the conduct of the affairs. To hold otherwise would render one of the two subsections of the same statute redundant.

In short, we hold that to make out a claim under § 1962(a) as incorporated by § 1964(c), a plaintiff must allege and prove an injury arising from use or investment of racketeering income. Appellants made no such allegation.

2. Count II, § 1962(b)

 In Count II, appellants attempt to allege a claim for violation of § 1962(b).

That section makes it unlawful to acquire control of an enterprise through a pattern of racketeering activity. Therefore, given the language of § 1964(c) set forth above, plaintiffs must allege an "acquisition" injury, analogous to the "use or investment injury" required under § 1962(a) to show injury by reason of a § 1962(b) violation. *Old Time Enterprises, Inc. v. International Coffee Corp.,* 862 F.2d 1213, 1219 (5th Cir.1989) (asserted claims under §§ 1962(a) and (b) properly dismissed "where the complaint fails to identify and describe any proximate causal relationship between an acquisition of an interest in an enterprise, through a pattern of racketeering activity or with income derived therefrom, and the damages claimed by [plaintiff]").

Plaintiffs do not allege that their purported injury (underpayments of wages and benefits) was caused by the acquisition of an enterprise. As with all their RICO claims, plaintiffs allege in Count II simply that their injuries result from "the intentional and continuous underpayment of legally required minimum wages and fringe benefits." Appellants' Complaint at 38. Therefore, even if a § 1962(b) claim can be established by a breach of the SCA, appellants' complaint does not allege such a claim. To analyze appellants' failure in this count at any great length would be redundant to our analysis of the failure of Count I. Section 1962(a) requires allegation and proof of injury arising from the "use or investment" of racketeering income. Section 1962(b) requires proof of injury arising from the acquisition or maintenance of an interest in or control of an enterprise. The reasons for the failure of appellants' first two counts otherwise are precisely the same. Consequently, so is our result. Count II also fails to allege a valid claim.

### 3. Count III, § 1962(c)

In Count III, appellants attempt to allege a claim for violation of § 1962(c). A civil RICO plaintiff claiming a violation of § 1962(c) must allege and prove (1) an injury to his business or property by reason of the violation; (2) the existence of an enterprise; (3) that the defendant was employed by or associated with the enterprise; (4) that the defendant participated in the conduct of the enterprise's affairs; and (5) that the participation was through a pattern of racketeering activity. *See Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639,* 913 F.2d 948, 950 (D.C.Cir.1990) (en banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). *See also Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (elements of a § 1962 violation are "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity").

Under the RICO definitional section, " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As we have recently noted, the statutory phrase setting forth the participation element of § 1962(c) makes it "unlawful for any person employed by or associated with [the] enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Thus, for a defendant to violate § 1962(c), that defendant must have not merely participated in the enterprise's affairs, "but *in the conduct* of the enterprise's affairs." *Yellow Bus,* 913 F.2d at 954. This, we held, requires participation in the operation or management of the enterprise itself. *Id.* at 952–56.

Here, appellants allege that the enterprise is the United States Navy. Appellants never alleged that appellees, either through a pattern of racketeering activity or otherwise, participated in the operation or management of the United States Navy, nor is it likely that they could make such an allegation in good faith. The complaint in the present case renders incarnate a specter we raised in *Yellow Bus.* There we noted that if we held that a union attempting to gain recognition from a company was participating in the conduct of the company's affairs, we would be establishing a precedent applicable to "any other

external entity attempting to contract with the putative enterprise." *Yellow Bus,* 913 F.2d at 955. This, we feared, would "federalize broad areas of state common law of contract, and 'RICOize' broad areas of labor law and other federal laws governing relationships not readily identifiable as being within the enacting intent of Congress." *Id.* We were not willing to take that step in *Yellow Bus,* nor are we today.

Without an allegation that appellants were participating in the operation or management of the United States Navy, the count does not state a claim for relief.

### 4. Count IV, § 1962(d)

In the fourth count, appellants attempt to allege a claim for relief under § 1962(d). That subsection renders it unlawful for any person to conspire to violate any of the provisions of the first three subsections. As we noted above, subsection (d) adds nothing substantive to the law. Neither does Count IV add anything substantive to appellants' complaint. All this count does is sketchily incorporate the prior three counts and add that the numerous defendants "conspired together to violate the provisions of 18 U.S.C. § 1962(a), (b) and (c)." As the incorporated Counts I–III do not set forth violations, the incorporating Count IV does not set forth a conspiracy to commit violations; therefore, it must fail as well.

### 5. Count V, "Fraud and Deceit"

In Count V, entitled "Fraud and Deceit," appellants leave the brave new world of RICO and descend to the more mundane landscape of common law fraud. As to this claim for relief, the complaint asserts no independent jurisdictional base. Both the complaint and appellants' brief in this Court recite only the jurisdictional sections of RICO and 28 U.S.C. § 1331. The RICO jurisdictional section, 18 U.S.C. § 1964, awards jurisdiction to the District Court only for cases arising under the RICO statute.[3] Title 28 U.S.C. § 1331, the federal

question jurisdiction section, of course grants "original jurisdiction of all civil actions arising out of the Constitution, law, or treaties of the United States." As Count V alleges common law fraud and deceit, it would not come within either of the jurisdictional statutes asserted by appellants.

The District Court entertained the claim within its pendent jurisdiction. As is well known, "[p]endent jurisdiction, in the sense of judicial *power,* exists whenever there is a [federal] claim ... and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (emphasis in original). Of course, this is a discretionary power on the part of the court, and it would be rare that we would reverse a district court for declining to exercise it. More pertinent to the present case, the Supreme Court has made it plain that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139. The District Court quite properly followed that course in dismissing Count V.

It may be credibly argued that appellants set forth no claim for relief in Count V in the first place. Any such claim may be barred by the exclusivity of remedy created in the SCA as we held in reference to the RICO claims and as the Ninth Circuit held in reference to all claims in *MSW, supra.* Moreover, it may be that the allegations of the complaint do not meet the heightened pleading requirement for fraud as set forth in Fed.R.Civ.P. 9(b). These may be fine arguments, but they are for another day. On this day, we affirm the District Court's plainly correct decision that, absent the jurisdictional peg of RICO, there was nothing to hold this pendent claim within the feder-

---

**3.** Although the statute is not explicit on the question, this jurisdiction is nonexclusive. State courts enjoy concurrent jurisdiction over civil

RICO claims. *Tafflin v. Levitt,* 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990).

al court. When that peg was pulled, the pendent claim fell.

### III. CONCLUSION

In summary, we hold: (1) the District Court correctly ruled that no private civil action (including a RICO action) will lie for breach of the Service Contract Act; (2) even if such action would lie, appellants have alleged no claim for relief in their present complaint; and (3) whether or not appellants' common law action for fraud and deceit is barred by the exclusivity of remedy under the Service Contract Act, the District Court properly ruled that it had no jurisdiction over the claim on the present complaint. The judgment of the District Court is therefore

*Affirmed.*