# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 28, 2021

Lyle W. Cayce
Clerk

No. 20-50734

Bonita Arruda; BV Boomers, Inc.; Heather's Fitness Center, L.L.C.; Fit and Firm Forever, L.L.C.; Carolyn Deegan, et al.,

*Plaintiffs—Appellants*,

*versus*

Curves International, Inc.; Curves NA, Inc.; North Castle Partners, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:20-CV-92

Before Jones, Southwick, and Costa, *Circuit Judges*.
Per Curiam:*

Plaintiff franchisees sued franchisor for breach of contract and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), alleging mail and wire fraud as the predicate acts to support the

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-50734

RICO claims.  The district court dismissed the RICO claims on the pleadings and refused to retain jurisdiction over the state-law claims.  On appeal, Plaintiffs challenge only the ruling on the RICO claims.  We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are former franchisees who owned and operated 30-minute-fitness and weight-loss centers using the "Curves for Women" name.  They sued Curves International, Inc., Curves NA, Inc., and North Castle Partners, L.L.C., alleging breach of contract and violations of RICO.

The first 32 counts are breach-of-contract claims; the RICO claims are Counts 33 and 34.  The two counts differ only in the addition of Curves NA as a defendant in Count 34 for those plaintiffs who signed or renewed franchise agreements after the formation of Curves NA.

Plaintiffs' complaint alleged that the Defendants concealed information from franchisees.  They essentially claim that the Defendants made two critical omissions in at least two different documents, and that these omissions suffice as predicate acts of mail and wire fraud for RICO purposes.  Because this appeal is from the grant of a Rule 12(b)(6) motion to dismiss, we accept the Plaintiffs' well-pled factual allegations as true.  We summarize the key ones.

First, when North Castle purchased and assumed control of Curves International,[1] Plaintiffs allege it drafted the "Operating Blueprint," which disclosed an intent to "prune 1,000+" Curves locations.  Second, in 2015

---

[1] The complaint explains that North Castle purchased a majority control of Curves International Holdings, Inc., in 2012, and that same year Curves Holdings acquired 100% interest in Curves International.

pursuant to a market study, Defendants became aware that the Curves name had a "negative halo," and "franchise locations would continue to close at a rate of more than 15% per year if nothing was done." Even in light of this information, North Castle "decided that it would make no further investment in the Curves brand, thereby ensuring the further collapse of the Curves franchise system."

Plaintiffs claim that these two items of information — the decision to prune and the results of the marketing study — should have been disclosed in at least two documents. First, they claim that disclosure was required in the Franchise Disclosure Documents ("FDDs") that the Federal Trade Commission requires franchisors to provide to prospective franchisees 14 calendar days before signing a franchise agreement. 16 C.F.R. §§ 436.2(a), 436.5(a)(6)(iv). Second, Plaintiffs claim that the information should have been disclosed in a letter dated February 9, 2016, from North Castle's "industry advisor," Marty Sharma, that was sent to all current "Franchisee Partners." That letter outlined areas of positive changes the franchisor claimed to make to the franchise "while at the same time, Defendants knew that the franchise system would fail." The failure to share these results in the FDDs or the Sharma letter, as well as in "other electronic communications," especially while affirmatively representing to make positive changes, is the basis for Plaintiffs' RICO claims.

Plaintiffs sued in the United States District Court for the Western District of Texas, asserting that the court had subject-matter jurisdiction over the case because the RICO claim presented a federal question, and the court could exercise supplemental jurisdiction over Plaintiffs' state-law breach-of-contract claims. 28 U.S.C. §§ 1331, 1367. The district court concluded that Plaintiffs had not stated a viable RICO claim. It held that Plaintiffs had not alleged a predicate act because Plaintiffs did not sufficiently

allege facts establishing that the Defendants had a duty to disclose the omitted information, nor did they plead predicate acts of mail and wire fraud with adequate particularity. It also held that many of the Plaintiffs "lacked standing" because causation was not met for Plaintiffs whose franchise agreements predated any omission by the Defendants. The district court dismissed the RICO claims. Because only the state-law claims were left, the court declined to exercise supplemental jurisdiction and dismissed the remaining claims as well. Plaintiffs timely appealed.

## DISCUSSION

We review the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) *de novo*, accepting the Plaintiffs' well-pled facts as true and viewing the facts in their favor. *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 783 (5th Cir. 2020). We may affirm a Rule 12(b)(6) dismissal on any grounds supported by the record. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019).

The complaint must provide the grounds entitling the Plaintiffs to relief, "requir[ing] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must state a plausible claim for relief — one that may be inferred from the complaint's factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Plaintiffs here rely on fraud as the predicate act for RICO, their complaint is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), requiring a plaintiff to "state with particularity the circumstances constituting fraud." *Williams v. WMX Techs. Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); FED. R. CIV. P. 9(b). This requires "at a minimum" that a plaintiff provide the "'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Thompson v.*

*Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Williams*, 112 F.3d at 179).

The issue in this case is whether Plaintiffs alleged facts with sufficient particularity to support that the Defendants engaged in the predicate acts of mail and wire fraud. Specifically, the case turns on whether the Defendants' omissions violated an affirmative duty to disclose information to the Plaintiffs.

RICO provides a private right of action, including "threefold the damages" for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). The "by reason of" language requires a plaintiff to show the defendant's violation was a but-for cause and a proximate cause of the plaintiff's injury. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008).[2] A plaintiff asserting a RICO claim under Section 1962(c) must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (footnote omitted). A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Plaintiffs here rely on the racketeering activity of mail and wire fraud as the predicate acts. § 1961(1)(B).

For the predicate act of mail fraud, a plaintiff must allege: (1) a scheme to defraud; (2) interstate or intrastate use of the mails; (3) use of the mails in

---

[2] These requirements are at times referred to as "RICO standing," but "courts should avoid using that term." *Gil Ramirez Grp., L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 409 n.8 (5th Cir. 2015) (alteration in original) (quoting *Lexmark Int'l, Inc. v. Static Control Components Inc.*, 572 U.S. 118, 128 n.4. (2014)). "Proximate causation is not a requirement of Article III standing . . . . [rather,] [i]t is an element of the cause of action under the statute, and so is subject to the rule that 'the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction.'" *Lexmark*, 572 U.S. at 134 n.6 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)).

connection with the scheme to defraud; and (4) actual injury to the plaintiff. *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 428 (5th Cir. 1990), *opinion modified on denial of reh'g* (Apr. 27, 1990). The elements of wire fraud are the same, except that wire fraud requires interstate use of the wire. § 1343.

We focus on the first element, which is a scheme to defraud. A plaintiff may rely on nondisclosure as "proof of a scheme to defraud only where the defendant is under a duty to disclose." *United States v. Harris*, 821 F.3d 589, 600 (5th Cir. 2016). "The gravamen of the offense is the scheme to defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element,'" *Bridge*, 553 U.S. at 647 (quoting *Schmuck v. United States*, 489 U.S. 705, 712 (1989)), but "the compensable [RICO] injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern," *Sedima*, 473 U.S. at 497.

Plaintiffs claim that the Federal Trade Commission's Franchise Rule imposed a duty on Defendants to disclose the decision to prune franchises and the kind of information that was contained in the marketing study. The Franchise Rule requires franchisors to furnish prospective franchisees with disclosure documents at least 14 calendar days before the prospective franchisee signs the franchise agreement. 16 C.F.R. § 436.2(a). Specifically, Plaintiffs rely on the part of the Franchise Rule that says, "Disclose . . . [t]he general market for the product or service the franchisee will offer. In describing the general market, consider factors such as whether the market is developed or developing, whether the goods will be sold primarily to a certain group, and whether sales are seasonal." § 436.5(a)(6)(iv).

Plaintiffs' position is that the Franchise Rule required the Defendants to disclose in their FDDs "from August 2012 through present" that the Curves name had a "negative halo" and that the franchise system was failing.

Even if the Franchise Rule would cover such omissions, Plaintiffs concede the Federal Trade Commission Act ("FTCA") provides no private right of action. *E.g.*, *Fulton v. Hecht*, 580 F.2d 1243, 1248 n.2 (5th Cir. 1978) ("[T]here is no private cause of action for violation of the FTC Act."). Other circuits agree. *Morrison v. Back Yard Burgers, Inc.*, 91 F.3d 1184, 1187 (8th Cir. 1996); *R.T. Vanderbilt Co. v. Occupational Safety & Health Rev. Comm'n*, 708 F.2d 570, 574 n.5 (11th Cir. 1983); *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 1002 (D.C. Cir. 1973); *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280–81 (9th Cir. 1973).

In a similar situation, the Eleventh Circuit rejected the theory that a violation of the Safety Act, which provides no private right of action, could serve as the basis for an affirmative duty for mail-fraud (and thus civil-RICO) purposes. *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 521–22 (11th Cir. 2000). In reaching this conclusion, that court relied on a prior decision of the D.C. Circuit, which similarly rejected that a violation of the Service Contract Act ("SCA") amounted to mail fraud to support a RICO claim. *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991). Though previous circuits had held that the SCA did not include a private right of action, the question whether a violation of the SCA gave rise to a private civil action under RICO had not been explicitly answered. *Id.* at 1227. The D.C. Circuit found the lack of a private right of action significant: "If there is no implied cause of action for damages, how much the less for treble damages?" *Id.* at 1228.

Congress's omission of a private right of action in the FTCA controls. A violation of the Franchise Rule does not itself constitute a predicate act of mail or wire fraud to support a RICO claim.

An argument appeared in Plaintiffs' opening brief that was not presented to the district court. The argument is that "the conduct which

Plaintiffs allege violated the Franchise Rule is also fraud under Texas common law," citing *Four Brothers Boat Works, Inc. v. Tesoro Petroleum Co., Inc.*, 217 S.W.3d 653 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Specifically, they argue that Texas law imposes a duty to disclose not only when a confidential or fiduciary relationship exists but also under other circumstances identified in *Four Brothers*. *See id.* at 670–71. They rely on *Four Brothers* to suggest that the omission of the information from the Sharma letter was a predicate act. After the Defendants responded that this argument was raised too late, Plaintiffs replied that their reliance on *Four Brothers* was not new but simply a "further discussion of Plaintiffs' position that failure to disclose under the [Franchise] Rule can be the basis of a fraud claim under Texas law, an issue always before the District Court."

Recharacterizing the issue as a follow-on to other arguments does not persuade. Plaintiffs never presented to the district court that a state-law duty could be the basis of the federal RICO claim or that violation of the Franchise Rule evidenced fraud under Texas law. These arguments are therefore waived, and we do not consider them. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

In conclusion, Plaintiffs have not sufficiently pled the predicate acts of mail or wire fraud because they have not shown that the Defendants had a duty to disclose the information that Plaintiffs rely on as the basis for their claim. As the district court stated, we must be wary of transforming business-contract or fraud disputes into federal RICO claims. "Breach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud. It is correspondingly difficult to recast a dispute about broken promises into a claim of racketeering under RICO." *Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir. 1999).

AFFIRMED.