**Russell P. BRIDGES, et al., Plaintiffs,**

v.

**BLUE CROSS AND BLUE SHIELD ASSOCIATION, et al., Defendants.**

**Civil Action No. 94–2161 SSH.**

United States District Court, District of Columbia.

Aug. 2, 1996.

Gary E. Mason, Cohen, Milstein, Hausfeld & Toll, Washington, DC, for Plaintiffs.

Gerald Goldman, Terry Bancroft Dowd Miller & Chevalier, Washington, DC, for Defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are the following motions, oppositions, and replies: defendant Blue Cross and Blue Shield Association's (hereinafter "BCBSA") motion to dismiss Counts I, II, III, IV, and V of plaintiffs' second amended complaint; defendant Office of Personnel Management's (hereinafter "OPM") motion to dismiss Counts III, IV, V, and VI of plaintiffs' second amended complaint; plaintiffs' combined opposition to defendants' motions to dismiss; BCBSA's reply; and the OPM's reply. Upon careful consideration of the entire record, the Court grants defendant BCBSA's motion to dismiss Counts I through V of the complaint, allowing leave for BCBSA to move to intervene as a party defendant as to Count VI of the

complaint if the Court later deems it to be necessary. The Court likewise grants defendant OPM's motion to dismiss Counts III, IV, and V of plaintiffs' complaint, but denies the OPM's motion to dismiss Count VI. The Court will, however, stay the case until the OPM has taken final action with regard to the physician-provider coinsurance issues currently under discussion at the agency.

## I. *Background*

The background of this case has been set out to some extent in the Court's unpublished January 24, 1995, Opinion granting BCBSA's motion to defer consideration of plaintiffs' class allegations, and the published February 1995 Opinion granting BCBSA's motion for joinder of the OPM as a party defendant. 889 F.Supp. 502 (D.D.C.1995). For the sake of clarity, however, the Court briefly recapitulates the background of this action and its current posture.

The Federal Employees Health Benefits Act (hereinafter "FEHBA"), 5 U.S.C. § 8901 *et seq.* (1994), authorizes the OPM to procure and administer health benefits plans for federal workers by contracting with private health insurance carriers. In addition to procuring contracts with insurance carriers, 5 U.S.C. § 8902, the OPM selects the benefits provided by the carriers under the federal employee plans, 5 U.S.C. § 8902(d), fixes premium rates, 5 U.S.C. §§ 8902(i), 8906, distributes information on the available health plans to federal employees, 5 U.S.C. § 8907, and makes determinations on claim disputes when they arise, 5 U.S.C. § 8902(j).

In "approximately 1960," according to plaintiffs, the OPM and BCBSA entered into a contract, renewable yearly, for a Service Benefit Plan (the "Plan") to provide insurance to federal employees who chose to enroll in the Plan. BCBSA represents a nationwide network of Blue Cross/Blue Shield entities; sixty-seven of those entities subcontract with and are licensed by BCBSA to provide health benefits to federal employees pursuant to the Plan. Employees who enroll in the Plan (or "enrollees") obtain physician and hospital services from BCBSA's member providers and facilities. Plaintiffs are current or retired federal employees who are enrolled with BCBSA's Plan.

Enrollees in the Plan are obligated to pay coinsurance on each medical claim, which, until the latest Plan year, was a certain percentage (usually 20 or 25%) of the health care provider or facility's charges.[1] BCBSA's licensee entities are obligated to the provider or facility for the remainder of the claim. In plaintiffs' second amended complaint, filed on October 27, 1995, plaintiffs allege that BCBSA's licensee entities, with BCBSA's "knowledge and approval," secretly negotiated discounts on the cost of services of member facilities and physicians, and then failed to apply those discounts to the enrollees' coinsurance payments.[2] Plaintiffs further allege in their complaint that BCBSA sent Explanations of Benefits ("EOB's") to enrollees which cloaked the existence of the discounts. Thus, as plaintiffs put it, "while [Plan enrollees] believe they are paying a copayment percentage ... based on the same billed amount as are the BCBSA subcontractor-licensees, this is not the case." Pls.' Second Am.Compl. at 3.

Following this Court's Order of February 28, 1995, which required plaintiffs to join the OPM as a defendant, plaintiffs filed the second amended complaint. It contains six

---

1. The 1996 Plan contemplates that, for certain services, the enrollee will not pay a percentage of the claim, but instead will pay a flat fee for the services.

2. Plaintiffs describe two variants of the "secret discount" arrangements in their second amended complaint. The first applies when the discount— say, of 30%—is based upon the original billed charge. A hospital bill for $1,000, with a 40% coinsurance payment, would be expected to mean that the BCBSA entity would be obligated to pay $600 to the hospital. Instead, it would pay $300, computed as $1,000 less the coinsurance payment of 40% ($400) less the discount of 30% of the original $1,000. The second example applies when the secret discount is based upon the amount remaining after the enrollee pays his coinsurance obligation. The 30% discount would be applied to the balance remaining (in the previous example, the balance remaining would be $600), and the BCBSA entity would pay the amount outstanding after the discount was applied, here, $420, computed as $1,000 less the coinsurance payment of $400, less 30% of $600 ($180).

counts.[3] Counts I and II allege that BCBSA committed two separate violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Count I alleges that BCBSA violated or conspired to violate RICO § 1962(a), which criminalizes the use or investment of racketeering income in an enterprise. Count II alleges that BCBSA violated or conspired to violate § 1962(c) of the statute, which criminalizes an entity's participation in a racketeering enterprise.

Count III of plaintiffs' second amended complaint states a breach of contract claim (styled as a claim for "enforcement of contract") against both the OPM and BCBSA, and Count IV states a claim for breach of fiduciary duty, likewise against both defendants. Count V states a separate claim against both defendants for a declaratory judgment determining their rights under the Plan. Count VI is captioned as a claim for "breach of statutory duties," and plaintiffs bring this claim against the OPM only.

## II. *Discussion*

■ Plaintiffs' factual allegations must be presumed true and liberally construed in their favor when reviewing the adequacy of a complaint for purposes of a Rule 12(b)(6) motion. *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C.Cir.1979) (citing *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977)). In addition, plaintiffs must be given every favorable inference that may be drawn from their allegations of fact. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994); *see also Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987). Dismissal is only appropriate if it appears beyond doubt that no set of facts proffered in support of plaintiffs' claims would entitle them to relief. *Haynesworth,* 820 F.2d at 1254 (citations omitted); *Phillips,* 591 F.2d at 968.

Plaintiffs' RICO claims against BCBSA must be dismissed, pursuant to the opinion of the United States Court of Appeals for the District of Columbia Circuit in *Danielsen v. Burnside–Ott Aviation Training Ctr.,* 941 F.2d 1220 (D.C.Cir.1991). The *Danielsen* court held that several RICO plaintiffs' claims against their government-contractor employer were subsumed by the statutory remedies offered under the Service Contract Act, 41 U.S.C. § 351 *et seq.* Although the governing statute in this case is different, the underlying principles are the same, and the claims cannot stand. Plaintiffs' breach of contract claim against BCBSA and the OPM must also be dismissed, because this claim likewise is nullified by the administrative remedies provided in the FEHBA. Plaintiffs' breach of fiduciary duty claim against both defendants must also be dismissed, because neither BCBSA nor the OPM has a cognizable fiduciary duty toward plaintiffs.

Plaintiffs' claim for a declaratory judgment will be dismissed by consent, because such a claim is properly brought as part of plaintiffs' prayer for relief, not as a separate cause of action. Finally, Count VI, plaintiffs' claim against the OPM for breach of its "statutory duties," will not be dismissed. However, Count VI, which the Court treats as an Administrative Procedure Act ("APA") claim challenging the OPM's oversight of BCBSA, will be stayed pending completion of the OPM's review of carrier practices regarding coinsurance paid for services rendered by physicians.

### A. *Plaintiffs' RICO Claims*

■ Plaintiffs allege in Count I of their second amended complaint that BCBSA violated RICO through the "use or investment" of racketeering income in its enterprise—that is, that BCBSA invested money derived

---

**3.** Plaintiffs' second amended complaint is styled as a class action. The Court's Order of January 24, 1995, deferred consideration of the class certification issue until after resolution of defendants' motions to dismiss. The motions to dismiss were filed several months later, in December 1995.

from acts of racketeering back into BCBSA.[4] Plaintiffs allege in Count II that BCBSA also violated RICO by participating in the conduct of its affairs "through a pattern of racketeering activity."[5] Counts I and II must be dismissed. The FEHBA leaves no room for a remedy under RICO; the broad enforcement and oversight powers of the OPM established in the statute indicate that the exclusive remedy for an action cognizable under the FEHBA lies under the FEHBA, not under another federal statute. In addition, even if the Court could somehow allow plaintiffs' RICO claims to proceed in the face of direct precedent to the contrary, plaintiffs' claim in Count I that BCBSA violated 18 U.S.C. § 1962(a) would also be dismissed because plaintiffs have failed to allege that they were injured by BCBSA's alleged "use or investment" of racketeering income in their enterprise.

**1. FEHBA sets forth an exclusive enforcement mechanism, and Congress did not intend that remedy to be supplemented by RICO actions.**

In *Danielsen v. Burnside–Ott Aviation Training Ctr.,* several employees of Navy aircraft maintenance contractors brought suit against their employers, alleging four separate counts of RICO violations and a common-law fraud claim. 941 F.2d at 1222. The *Danielsen* plaintiffs alleged that the defendant contractors had entered into contracts with the government using improper wage classifications and had repeatedly used the mails to further the contracts (thus committing, in the plaintiffs' view, mail fraud).

Under the Service Contract Act ("SCA"), government service contracts and bid specifications must contain, among other things, "a provision specifying the minimum monetary wages to be paid the various classes of service employees." 41 U.S.C. § 351(a)(1). The SCA vests the Secretary of Labor with the responsibility to make a determination of the applicable minimum wages based on prevailing rates in the area in which the service contract is to be performed. *See Danielsen,* 941 F.2d at 1223. Pursuant to that grant of authority, the Secretary of Labor promulgated an extensive series of regulations governing the wage determination process, including procedures for enforcement and review. *Id.*

Plaintiffs in *Danielsen* challenged defendants' classification of their job positions, arguing that they should have been classified as "aircraft workers," not "technicians," and that they should have been paid a higher wage as a result of the misclassifications. Their RICO action was based on these misclassifications. The Court of Appeals affirmed the district court's dismissal of plaintiffs' RICO claims, holding that a "private civil action, even couched in RICO terms, will not lie for an alleged breach of the SCA."[6]

The Court of Appeals in *Danielsen* drew from the opinion of the Ninth Circuit in *Miscellaneous Service Workers v. Philco–Ford Corp.,* 661 F.2d 776 (9th Cir.1981), which also addressed the availability of a private civil action against a government contractor arising from violations of the SCA. The *Danielsen* court and the Ninth Circuit,

---

**4.** 18 U.S.C. § 1962(a) provides, in pertinent part:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in ... the operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**5.** 18 U.S.C. § 1962(c) provides, in pertinent part:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

**6.** The trial court in *Danielsen* had characterized the tension between the remedy contained in the SCA (whereby the United States could bring an action against a service contractor suspected of underpaying its employees, *see* 41 U.S.C. § 354(b)) and that of RICO as a question of "preemption." *Danielsen v. Burnside–Ott Aviation Training Ctr.,* 746 F.Supp. 170 (D.D.C.1990). The Court of Appeals, while agreeing with the district court's reasoning, disagreed with its terminology: the question is not truly one of preemption, it noted, but the "narrower question ... whether there is a statutory provision of an exclusive remedy rather than the preemption of an entire field." 941 F.2d at 1227.

in turn, used the standards set out in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to determine whether such a remedy was intended under the SCA. The four-part test of *Cort v. Ash* asks:

> (1) Is the plaintiff one of a class for whose especial benefit the statute was created?
>
> (2) Is there any indication of a legislative intent to fashion such a remedy?
>
> (3) Is it consistent with the underlying legislative scheme to apply such a remedy?
>
> (4) Is the cause of action one traditionally relegated to state law, so that an implied federal cause of action would be inappropriate?

*Danielsen*, 941 F.2d at 1227 (quoting *Miscellaneous Service Workers*, 661 F.2d at 780 (internal quotations omitted)).[7]

As with *Danielsen*, plaintiffs here likely pass the first test of *Cort*, but not the remaining tests. Plaintiffs, for the purposes of this Opinion only, could be seen to represent the class for whose benefit the FEHBA was created. The FEHBA was created to provide a network of health insurance options for federal employees, both to attract able workers to the federal government and to streamline, to the extent possible, the health insurance options for those workers. But as defendant BCBSA points out, nothing in the FEHBA, nor in its implementing language or legislative history, indicates that the legislature had any intent to allow a civil RICO action to spring out of a violation of the FEHBA, nor would it be consistent with the underlying legislative scheme of the FEHBA to apply such a remedy.

The FEHBA established a comprehensive administrative enforcement mechanism for review of disputed claims—a mechanism that only plaintiff Humphrey attempted to invoke.

*See, e.g.,* 5 U.S.C. § 8902(j); 5 C.F.R. § 890.105(a) (providing that the OPM, upon the request of the enrollee and after the enrollee appeals the denial of a claim to the carrier, will review disputed claims). The FEHBA also provides that, if an enrollee is not satisfied with the OPM's resolution of his claim, he may file a judicial action against the OPM, not against the carrier. 5 C.F.R. § 890.107(c).[8] A judicial action against the OPM, whether stemming from dissatisfaction with the OPM's resolution of a specific claims dispute, 5 C.F.R. § 890.107(c), or from dissatisfaction with the OPM's general programmatic decisions, *see* 5 C.F.R. § 890.107(b), is limited to the deferential standard of review prescribed in the APA. *See Dyer v. Blue Cross & Blue Shield Ass'n*, 848 F.2d 201, 203 (D.C.Cir.1988); *Nat'l Fed'n of Fed. Employees v. Devine*, 679 F.2d 907 (D.C.Cir.1981).

In addition to reviewing disputed claims, the OPM also has the power to penalize or debar carriers who violate the terms of their contracts with the OPM. Pursuant to the broad regulatory authority conferred by 5 U.S.C. § 8913(a), the OPM has promulgated detailed regulations governing FEHBA contracts. *See* 48 C.F.R. Chapter 16. If a carrier engages in a "pattern of poor conduct" or displays "evidence of misconduct," the OPM may withdraw its approval of the carrier. 48 C.F.R. § 1609.7001(c)(6). If the carrier engages in "fraudulent or unethical business or health care practices or otherwise display[s] a lack of business integrity or honesty," *id.* at § 1609.7001(c)(2), the same penalty may be invoked. The OPM may require carriers to take corrective action to remedy deficiencies in their programs, *see* 48 C.F.R. § 1646.270, and they may, in some

---

**7.** Neither *Miscellaneous Service Workers* nor *Danielsen* directly addressed the fourth part of the *Cort* test, probably because, as the *Danielsen* court pointed out, the question of which federal statutory remedy subsumes the other does not pose a "state remedy versus federal remedy" problem *per se*. *See* 941 F.2d at 1227.

**8.** Plaintiffs contended in their opposition that 5 C.F.R. § 890.107(c) allowed a disgruntled enrollee to bring suit directly against the carrier on a disputed claim. Pls.' Opp. at 49. Plaintiffs apparently were unaware of the rather recent

amendment to that regulation, promulgated on March 28, 1995, which states that "[a] legal action to review final action by OPM involving [a] denial of health benefits must be brought against OPM," and that "the recovery in such a suit will be limited to the amount of benefits in dispute." 60 Fed.Reg. 16,039 (Mar. 29, 1995). The amendment clarifies that a covered individual must follow the OPM's administrative review process before seeking judicial review, and that when such review is sought, the proper party defendant is the OPM. 60 Fed.Reg. 16,037.

circumstances, advise enrollees of a carrier's deficiencies and provide them the opportunity to transfer to another health insurance plan. 48 C.F.R. § 1652.222–70(b)(3). Carriers must also submit to audits by the OPM, 48 C.F.R. §§ 1609.7001(a)(3)–(a)(4), 1652.204–70, and the OPM may penalize a carrier for failing to inform the OPM of "significant events" that may materially have an impact on the carrier's ability to comply with the terms of its contract with the OPM, 48 C.F.R. § 1652.222–70(a).

In sum, as with *Danielsen*, "the [FEHBA] envisions a comprehensive administrative rubric for the protection of federal [employees]." 941 F.2d at 1227 (quoting *Miscellaneous Service Workers*, 661 F.2d at 780). As in *Danielsen*, the same concerns arise when the possibility of a RICO remedy is weighed against the remedies available in the statute:

> [W]hat plaintiff will pursue his administrative remedies under the [FEHBA] where more direct and expeditious relief is available in a private suit? How much more the case where plaintiffs couch their complaint in terms of RICO to give them, not a remedy equal to that provided under the [FEHBA], but three times that remedy? How much more still where their attorneys would be extracting their fees not from their clients but from the other side?

*Danielsen*, 941 F.2d at 1228 (internal citations omitted). And finally, as with *Danielsen*, plaintiffs' RICO claims must be dismissed, because the detailed enforcement scheme of the FEHBA leaves no room for a RICO action here.

## 2. Count I must also be dismissed for failure to adequately allege injury under 18 U.S.C. § 1962(a).

■ While the *Danielsen* court was "firm[ly] convi[nced]" that the SCA afforded plaintiffs no additional private remedy under RICO, the court also found that plaintiffs had not made out RICO claims sufficient to withstand a motion to dismiss. 941 F.2d at 1229–33. Count I of plaintiffs' second amended complaint suffers from the same deficiency. In order to state a claim for violation of 18 U.S.C. § 1962(a), plaintiffs "must plead and prove that [their] injur[ies] flowed from the

defendant's *use* or *investment* of racketeering income. It is not sufficient to allege injury flowing from the predicate acts of racketeering." *Danielsen*, 941 F.2d at 1229 (emphasis in original) (citations omitted).

Plaintiffs have made no such allegation. They argue somewhat weakly in their opposition that they were injured by BCBSA's investment in its enterprise because BCBSA uses the income derived from its secret discount practices to "cause providers to agree to accept payments for services rendered to class members at a negotiated rate that is less than the amount on the [Plan] participants' bills," and that BCBSA uses that ill-gotten income to distribute "promotional pamphlets" to federal employees, in an attempt to obtain greater market power. Pls.' Opp. at 52. Plaintiffs contend that the injury resulting from these machinations is that "federal employees overpay their coinsurance." *Id.*

Plaintiffs are attempting to reconfigure the injury flowing from a § 1962(c) violation to satisfy the requirements of § 1962(a), but the shoe does not fit. Allegations of injury flowing from BCBSA's alleged use of racketeering income to finance promotional pamphlets or to somehow pressure more care providers into agreeing to accept payment at discounted rates are simply too far removed to be cognizable under this section. Accordingly, even if plaintiffs somehow could be found to have stated a justiciable RICO claim under § 1962(c) in Count II, Count I must be dismissed for failure to allege injury resulting from BCBSA's investment of racketeering income into its business.

### B. *Plaintiffs' Breach of Contract Claim*

■ Plaintiffs' breach of contract claim against the OPM and BCBSA must also be dismissed, for much the same reasons as discussed in part A, *supra*. A claim for breach of contract is, of course, cognizable under the FEHBA's enforcement procedures. *See* 5 U.S.C. § 8902(j) ("Each contract under [the FEHBA] shall require the carrier to agree to pay for ... a health service ... if the [OPM] finds that the employee ... is entitled thereto under the terms of the contract"). Plaintiffs offer three

sentences in their opposition in defense of their breach of contract claim. *See* Pls.' Opp. at 52–53. Plaintiffs' brief argument simply states that their breach of contract claim is "a valid cause of action," because "OPM regulations specifically provide that 'an action to recover on a claim for health benefits should be brought against the carrier of the health benefits plan.'" *Id.* (citing 5 C.F.R. § 890.107).[9] As discussed in footnote 8, *supra*, that regulation was amended in March 1995. It now states that "[a] legal action to review final action by OPM involving [the] denial of health benefits must be brought against OPM." 5 C.F.R. § 890.107. Even if the former regulation could conceivably apply to plaintiffs' action (and plaintiffs do not argue that the old regulation should apply despite the existence of the new regulation), plaintiffs' breach of contract claim would still not survive defendants' motion to dismiss. All but one plaintiff failed to exhaust his administrative remedies under the FEHBA before filing suit against the carrier. *See* 60 Fed.Reg. 16,037 (clarifying that "the administrative review process must be followed before legal action is pursued in the courts"). Plaintiff Humphrey alone attempted to pursue the administrative remedies outlined in the FEHBA. Again, to the extent that the former regulation could somehow apply to plaintiffs' second amended complaint, the portion of plaintiff Humphrey's breach of contract claim applicable to facility coinsurance discounts is moot, since Humphrey has received reimbursement for his underpaid facility-based coinsurance claim. The portion of Humphrey's breach of contract claim applicable to physician discounts is premature, since the OPM has not yet completed its review of the issue. Accordingly, even if the pre–1995 regulation were applicable to this action, plaintiff Humphrey's breach of contract claim must be dismissed along with the other plaintiffs' breach of contract claims. Count III therefore is dismissed as against both the OPM and BCBSA.

### C. Plaintiffs' Breach of Fiduciary Duty Claim

Plaintiffs' claim that both defendants breached their fiduciary duties to them must fall as well. First, the OPM owes no fiduciary duties to plaintiffs. In fact, as BCBSA points out, the primary duty of the OPM under the FEHBA is to the government. The OPM must maximize the benefits flowing from the federal employee health plans while minimizing the cost to the government; the welfare of the federal employees enrolled in the plans, while certainly relevant, is not the OPM's controlling obligation. Plaintiffs have cited no law to the contrary, nor can the Court find any to support this proposition.

Curiously, in their opposition to defendants' motions to dismiss, plaintiffs do not contest defendants' arguments as to the OPM's lack of fiduciary obligation. Instead, they concentrate their efforts on arguing that BCBSA had fiduciary duties to plaintiffs that it breached. However, controlling precedent dictates the conclusion that BCBSA does not have a fiduciary duty to its federal enrollees, and plaintiffs' arguments accordingly are of little avail. In *Christiansen v. Nat'l Sav. and Trust Co.*, 683 F.2d 520, 530–32 (D.C.Cir.1982), the Court of Appeals for this Circuit refused to find that BCBSA had a fiduciary duty to federal employees enrolled, pursuant to the FEHBA, in BCBSA's Plan. The Court of Appeals held, as a matter of law, that the FEHBA scheme did not create fiduciary or trust relationships, but created "third party beneficiary contracts." *Id.* at 530.

Plaintiffs repeatedly cite to ERISA cases holding that BCBSA does have fiduciary duties to insurance enrollees. Pls.' Opp. at 55–56. But cases arising under ERISA law are of no moment in the context of the FEHBA. ERISA, in the words of the Supreme Court, "abounds with the language and terminology of trust law," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110,

9. The OPM also argues in its motion to dismiss, in a slightly different vein, that it has primary jurisdiction over plaintiffs' claims disputes. Plaintiffs argue in their opposition that the OPM does not, in fact, meet the requirements for primary jurisdiction, citing *Skoller v. Blue Cross-*

*Blue Shield of Greater New York,* 584 F.Supp. 288, 290 n. 1 (S.D.N.Y.1984). *Skoller* was implicitly overruled in 1993 by the United States Court of Appeals for the Second Circuit, in *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588 (2d Cir.1993).

109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989), and that language has been held to render the obligations of a carrier fiduciary in nature. *See Libbey–Owens–Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio,* 982 F.2d 1031, 1035 (6th Cir.1993) (when an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA "fiduciary"). The FEHBA is a different scheme altogether; it does not "abound[ ] with the language and terminology of trust law" as does ERISA, and comparisons to ERISA law are unavailing in this context. Accordingly, plaintiffs' claim for breach of fiduciary duty must fail as against both defendants, and Count IV must be dismissed.

### D. *Plaintiffs' Claim for Declaratory Judgment*

Plaintiffs concede that Count V, which is styled as a claim for a declaratory judgment regarding plaintiffs' rights under the Plan, is not cognizable as a separate cause of action, but is more properly included in their prayer for relief. Accordingly, the Court dismisses Count V. (The request for a declaratory judgment is repeated in plaintiffs' prayer for relief, *see* Pls.' Second Am.Compl. at 58, and plaintiffs accordingly need not amend their prayer for relief to include a request for a declaratory judgment.)

### E. *Plaintiffs' Claim of "Breach of Statutory Duties" Against the OPM*

■  Count VI of plaintiffs' second amended complaint is ambiguous. It states, in relevant part:

Under [the FEHBA], the OPM has a duty to make such studies, reports and audits as may be necessary to enable the OPM to carry out its functions under the statute, which include protecting the health, welfare and interests of the Federal Employees enrolled in programs contracted for by the OPM.... OPM has violated its statutory duties and obligations under [the FEHBA] by failing to protect the interests of the plaintiffs and the class from the wrongful practices of BCBSA alleged herein, of which it knew or should have known.

Plaintiffs and the [putative] class herein also are third-party beneficiaries of any agreements entered into between OPM and BCBSA. OPM has violated its obligations to such third-party beneficiary plaintiffs and class by entering into reimbursement agreements with BCBSA which fail to provide plaintiffs and the class adequate relief from the wrongs which plaintiffs and the class have suffered as a result of the wrongful acts of the BCBSA.

Pls.' Second Am.Compl. at 57–58 (paragraph numbers omitted). Plaintiffs present this claim as one for "breach of statutory duties," and they bring it against the OPM only.

Although the claim is not styled as an APA claim, that is what it amounts to. Count VI is essentially a challenge to the OPM's general programmatic decisions; plaintiffs claim that the OPM did not monitor BCBSA closely enough, and that when the OPM finally was made aware of BCBSA's "secret discount" practices, it entered into "reimbursement agreements with BCBSA" that fell short of the plaintiffs' expectations. The "reimbursement agreements" referenced in Count VI are amendments to the Plan and a provision for rebates and adjustment checks set forth in the OPM's notice of final agency action, filed with the Court on September 18, 1995. Final agency action has only been taken with respect to facility coinsurance issues, however; the OPM is still in the process of negotiating a resolution of physician coinsurance issues with BCBSA.

Under the FEHBA and the APA, plaintiffs have a right to challenge the OPM's general programmatic decisions in court, after the OPM has taken final agency action on the matters at issue, and the court will review those decisions according to the deferential "arbitrary and capricious" standard set forth in the APA. *See* 5 U.S.C. § 704; 5 C.F.R. § 890.107(b). Accordingly, the sixth claim for relief in plaintiffs' second amended complaint can (and, the Court thinks, should) be read to state a challenge under the APA to the OPM's resolution of the facility coinsurance issues, including the amendments to the Plan and the rebates and adjustment checks mailed to enrollees. Count VI therefore will remain, although the Court will request

**46**

plaintiffs to file a third amended complaint clarifying that count as presenting a challenge under the APA to the OPM's oversight of BCBSA and the OPM's final agency action on the coinsurance issues. In addition, since the OPM has not yet taken final agency action on the physician coinsurance issues (as opposed to the facility coinsurance issues, on which final agency action has been taken), and in the interest of efficiency, the Court will stay this action pending receipt of the OPM's notice of final agency action on those remaining issues.

### III. *Conclusion*

In conclusion, Counts I, II, III, IV, and V of plaintiffs' second amended complaint are dismissed. Count VI remains, but is stayed pending resolution of ongoing agency action on physician coinsurance payment issues.