Peter C. LIVINGSTON, David W. Livingston, Victor Polizzotti, David R. Mauroff, and John Does 1 through 50, Plaintiffs,

v.

SHORE SLURRY SEAL, INC., Shore Microsurfacing Systems, Inc., Robert Capoferri, Robert Bevilacqua, Kenneth Messina, Donald Potter and Steven Plummer, Defendants.

No. CIV. A. 00–773(JEI).

United States District Court, D. New Jersey.

May 31, 2000.

Steven A. Berkowitz, Marlton, NJ, for plaintiffs.

Stevens & Lee, P.C. by Neil C. Schur, Cherry Hill, NJ, for defendants.

## OPINION

IRENAS, District Judge.

Presently before the Court is the motion to dismiss of defendants Shore Slurry Seal, Inc., Shore Microsurfacing Systems, Inc., Robert Capoferri, Robert Bevilacqua, Kenneth Messina, Donald Potter and Steven Plummer ("defendants"). For the reasons set forth below, defendants' motion is granted.

## I.

Plaintiffs Peter C. Livingston, David W. Livingston, Victor Polizzotti, and David R. Mauroff ("plaintiffs") are current or former employees of defendants Shore Slurry Seal, Inc. and Shore Microsurfacing Systems, Inc. They filed the Complaint in this matter on February 22, 2000, asserting claims under the Davis–Bacon Act, 40 U.S.C. § 276a *et seq.*, The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1981 *et seq.*, and the prevailing wage acts of New Jersey, New York, and Pennsylvania.[1]

Defendants Shore Slurry Seal, Inc. ("Shore Slurry") and Shore Microsurfacing Systems, Inc. ("Shore Microsurfacing") are corporations engaged in the business of road construction and road resurfacing. Both have their principal place of business in Hammonton, New Jersey. Defendants Robert Capoferri, Robert Bevilacqua, Kenneth Messina, Donald Potter, and Steven Plummer are employees of Shore Slurry and Shore Microsurfacing who allegedly

---

1. On April 13, 2000, plaintiffs filed a motion to amend their original Complaint pursuant to Fed.R.Civ.P. 15(a) in order to correct several "clerical errors." This motion is granted and the Court will rely on plaintiffs' Amended Complaint in resolving the instant motion to dismiss.

exercised supervisory authority over plaintiffs.

Plaintiffs claim that Shore Slurry and Shore Microsurfacing successfully bid and performed various road construction, road surfacing, and road resurfacing projects for the United States and for New Jersey, New York, and Pennsylvania. Plaintiffs have not provided the time, location, or a description of these projects. However, plaintiffs claim that they were paid less than the "prevailing wage" mandated by either the state prevailing wage statutes or the federal Davis–Bacon Act for work performed on these projects.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion, the court will accept the allegations of the complaint as true. *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). Dismissal of claims under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although the court must assume as true all facts alleged, "[i]t is not ... proper to assume that the [plaintiff] can prove any facts that it has not alleged." *Associated General Contractors of Calif., Inc., v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Finally, when "[c]onfronted with [a 12(b)(6) ] motion, the court must review the allegations of *fact* contained in the complaint; for this purpose the court does not consider conclusory recitations of law." *Commonwealth of Pennsylvania v. PepsiCo, Inc.,* 836 F.2d 173, 179 (3d Cir.1988) (emphasis added).

## III.

In Count V, plaintiffs charge defendants with conspiracy to violate the Davis–Bacon Act. The Davis–Bacon Act is designed to protect laborers and mechanics employed on government projects from being paid at less than the locally prevailing wage rate. *Universities Research Assoc., Inc. v. Coutu,* 450 U.S. 754, 771, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981). Section 1(a) of the Act, 40 U.S.C. § 276a(a), provides that federal construction contracts in excess of $2,000 shall contain a provision stating that laborers are to be paid no less than the wages prevailing in the community where the construction work is performed. The authority to determine the relevant wage rate is explicitly delegated to the Secretary of Labor and the Secretary's determination is not subject to judicial review. *Coutu,* 450 U.S. at 761 n. 10, 101 S.Ct. 1451.

The Act sets forth a detailed administrative scheme to enforce violations of its provisions. The Act provides that if the contractor fails to pay the prevailing wages specified in the contract, the Government contracting officer may withhold so much of the accrued payments as may be considered necessary to pay the laborers and mechanics the difference between the contract wages and those actually paid. 40 U.S.C. § 276a(a). Section 276a–2 authorizes the Comptroller General to pay these accrued payments directly to the laborers and mechanics. In the event that these funds are insufficient to reimburse the employees, they may have "the right of action and/or of intervention against the contractor and his sureties" pursuant to the Miller Act, 40 U.S.C. § 270a *et seq.* 40 U.S.C. § 276a–2(b). In addition, if the contractor fails to pay at least the stipulated minimum wages, the contract may be terminated and the contractor debarred from all Government contracts for a period of three years. 40 U.S.C. § 276a–2(a).

Plaintiffs' claim under the Davis–Bacon Act must be dismissed because there is no private right of action under the Act. *Weber v. Heat Control Co.,* 579 F.Supp. 346 (D.N.J.1982), *aff'd,* 728 F.2d 599 (3d Cir. 1984). In *Weber,* the district court relied

on the reasoning of the Fifth Circuit in *United States v. Capeletti Bros. Inc.,* 621 F.2d 1309, 1315 (5th Cir.1980). In that case, the Circuit Court discussed the "elaborate administrative scheme" set forth in the Act to enforce compliance with prevailing wage requirements and concluded that "neither the language, the history, nor the structure of the statute supports the implication of a private right of action...." *Id.* at 1317. Because there is no private right of action under the Davis–Bacon Act, plaintiffs' claim that defendants conspired to violate the Act must be dismissed. *See In re Orthopedic Bone Screw Prod. Liab. Litig.,* 193 F.3d 781, 790 (3d Cir.1999)("A claim of civil conspiracy cannot rest solely upon the violation of a federal statute for which there is no corresponding private right of action.").

## IV. RICO

### A. Background

In Counts I and III of plaintiffs' Amended Complaint, plaintiffs assert claims under RICO, 18 U.S.C. § 1962(c). Section 1962(c) provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The RICO statute lists a number of acts that can constitute the "predicate acts" that compose a pattern of racketeering activity. *See* 18 U.S.C. § 1961(1). In this case, plaintiffs allege the predicate acts of mail and wire fraud. 18 U.S.C. §§ 1341, 1343.

 A violation of the mail and wire fraud statutes requires proof of: (1) a scheme or artifice to defraud; (2) use of the mails or interstate wires in furtherance of the scheme; and (3) participation by the defendant in the scheme or artifice. *See*

*Schmuck v. U.S.,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). The wire or mailing itself need not be fraudulent. A so-called "innocent mailing" will suffice if "incident to an essential part of the scheme." *Id.* at 711. But while the mailing need not be fraudulent itself, the overall scheme "must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1415 (3d Cir.1991) (quoting *United States v. Pearlstein,* 576 F.2d 531, 535 (3d Cir.1978)). In this case, plaintiffs claim that defendants engaged in a scheme to pay plaintiffs "substantially less than the contractually and legally required Prevailing Wage required by either the State in which the contract was performed, or the Davis–Bacon Act when the contracts were performed pursuant to a contract with the federal government...." (Am. Compl., ¶ 24).

### B. Rule 9(b)

 Claims of mail and wire fraud which support an alleged RICO violation must satisfy the heightened pleading requirements of Fed.R.Civ.P. 9(b). Rule 9(b) states, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges. *Seville Indus. Mach. v. Southmost Machinery,* 742 F.2d 786, 791 (3d Cir.1984). However, courts should apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants. *See Christidis v. First Pennsylvania Mortg. Trust,* 717 F.2d 96, 99–100 (3d Cir.1983). Also, plaintiffs need not plead the exact "date, place or time" of the fraud, so long as they use an "alternative

means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville,* 742 F.2d at 791.

In *Seville,* plaintiff, an industrial machinery trader, claimed that defendants fraudulently induced it to enter into various purchase, consignment, joint venture and service agreements regarding certain industrial machinery, and that this fraud constituted a "pattern of racketeering" in violation of RICO, 18 U.S.C. § 1962(b), (c), & (d). The district court dismissed the Complaint on the ground that Seville failed to plead the circumstances of the fraudulent acts that formed the alleged pattern of racketeering activity with the particularity required by Rule 9(b). The Third Circuit reversed and found that plaintiff had adequately satisfied the requirements of Rule 9(b) by incorporating into the complaint a list identifying with "great specificity" the pieces of machinery that were the subject of the alleged fraud. *Id.* The Court stated:

> Seville divided this list into five 'exhibits' and identified which pieces of equipment were the subject of which alleged fraudulent transaction. The complaint sets forth the nature of the alleged misrepresentations, and while it does not describe the precise words used, each allegation of fraud adequately describes the nature and subject of the alleged misrepresentation.

*Id.*

In contrast, in *Saporito v. Combustion Eng'g,* 843 F.2d 666 (3d Cir.1988), *cert. granted and judgment vacated on other grounds,* 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989), the Third Circuit upheld the district court's dismissal of plaintiffs' RICO claims for failure to meet the requirements of Rule 9(b). In *Saporito,* plaintiffs claimed that defendants induced plaintiff employees to opt for a retirement plan while withholding information about the plan, and at the same time divulging such information to other selected employees. Plaintiffs alleged that defendants used the mails and wires in furtherance of this scheme in violation of 18 U.S.C.

§§ 1341 and 1343. The Third Circuit contrasted the Complaint in this case with the Complaint in *Seville* and concluded that plaintiffs' allegations in this case were insufficiently detailed. The Court stated, "[a]lthough the appellants' complaint does indicate the general content of the representations ... it does not indicate who the speakers were ... or who received the information...." *Id.* at 675.

Similarly, in *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644 (3d Cir. 1998), plaintiffs alleged that defendants committed mail and wire fraud as predicate racketeering acts. The Third Circuit summarized plaintiffs' allegations:

> The First Amended Complaint alleges that [defendant] improved only a small portion of the 1,000 square mile tract of land that it owned in Florida and that it had no intention of developing the land further. Prospective purchasers were told, however, that the entire tract would be developed. According to plaintiffs, [defendant] targeted unsophisticated purchasers, particularly those who spoke English only as a second language. Prospective purchasers were invited to attend lavish "investment seminars" at which [defendant] represented that the value of the real estate continually appreciated, that there was a good resale market for the lots and houses, and that the real estate was an excellent investment. The Complaint further alleges that much information was concealed from prospective purchasers, including the very low resale value of the lots, the artificial nature of the original sale prices of the lots, and the fact that most purchasers defaulted within two years, allowing [defendant] to cancel their contracts and resell the same lots over and over again. According to plaintiffs, similar tactics were also used to sell homes to those who already owned lots.

*Id.* at 648.

The Third Circuit held that, although the Complaint described the alleged fraud-

ulent scheme in some detail, it failed to provide sufficient, specific allegations about the alleged misrepresentations made to any of the named plaintiffs. The Court noted that:

The Complaint includes no information about the actual presentations made to either the Rolos or the Tenerellis, including who made the presentation, when it took place, or with reference to what property it was made. The same is true with regard to the allegedly fraudulent mailings. The content of the mailings is described in reasonably specific terms, but when, by whom, and to whom a mailing was sent, and the precise content of each particular mailing are not detailed.

*Id.* The Court concluded that plaintiffs had failed to satisfy the requirements of Rule 9(b) and affirmed the district court's dismissal of plaintiffs' RICO claims on this basis.

■ In this case, plaintiffs' claims fail to meet the Rule 9(b) standard. Plaintiffs allege that:

(1) "At various times relevant hereto, each Plaintiff along with others worked in various capacities for Defendant Corporations, on the Projects, at the Project site, in a specific classification." (Am. Compl., ¶ 20)

(2) "In addition to performing public contracts for the State and Federal Governments in New Jersey, Defendant Corporations, performed public contracts for the State and Federal Governments in the States of New York and Pennsylvania." (*Id.* at ¶ 21).

(3) "Pursuant to the applicable statutes, the public contracts that were awarded to Defendant Corporations required that the contractor pay its employees that worked on the Projects, at the Project site in a specific classification, the Prevailing Wage." (*Id.* at ¶ 22)

(4) "Defendants, Robert Capoferri, Robert Bevilacqua, Kenneth Messina, Donald Potter, Steven Plummer combined, confederated, conspired and agreed to cause Defendant Corporations, to pay Plaintiffs amounts substantially less than the contractually and legally required Prevailing Wage." (*Id.* at ¶ 25)

(5) "Defendants, Robert Capoferri, Robert Bevilacqua, Kenneth Messina, Donald Potter, Steven Plummer used the United States Mail to deliver paychecks to Plaintiffs in furtherance of a scheme to violate the applicable State Prevailing Wage Act, the Davis Bacon Act and/or the Portal to Portal Pay Act." (*Id.* at ¶ 26)

(6) "The paychecks, which specifically detailed the hourly rates and provided payments therefore, and were in violation of the applicable Prevailing Wage Act, were mailed from Defendant Corporations to the Plaintiffs residences and would arrive weekly on or about every Thursday." (*Id.* at ¶ 27)

As noted above, plaintiffs need not specify the precise date, place or time of the alleged fraud. However, plaintiffs must plead facts from which defendants can divine the conduct with which they are charged. Plaintiffs have failed to do so.

In this case, plaintiffs allege that the paychecks they received "were in violation of the applicable Prevailing Wage Act." (Am.Compl., ¶ 27). However, a violation of a prevailing wage act does not itself constitute fraud. *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 529 (3d Cir.1998)("[D]efendant's heavy-handed business tactics, ... while relevant to a tortious interference claim, cannot be made to fit within the statutory and doctrinal constraints of the mail and wire fraud statutes."); *Blount Financial Services, Inc. v. Walter E. Heller and Co.,* 819 F.2d 151, 152–53 (6th Cir.1987) (holding that absent specific allegations of intentional fraud, "[s]ending a financial statement which misconstrues the prime rate provided by the terms of the contract may breach the contract but it does not amount to a RICO mail fraud cause of action."); *United States v. Kreimer,* 609 F.2d 126,

128 (5th Cir.1980) ("[T]he [mail fraud] statute does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business contract.").

Plaintiffs do allege that the individual defendants "combined, conspired and confederated" to violate the various wage acts. (Am.Compl., ¶ 25). However, plaintiffs fail to identify a single fraudulent misrepresentation or omission made in connection with this alleged conspiracy. Even if plaintiffs had identified such a fraudulent statement or omission, they have not identified the person or persons who made such a statement or omission or the persons deceived. *See Naporano Iron & Metal Co. v. American Crane Corp.,* 79 F.Supp.2d 494, 511 (D.N.J.1999)("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'") (quoting *Eli Lilly v. Roussel Corp.,* 23 F.Supp.2d 460, 492 (D.N.J.1998)); *see also Rolo,* 155 F.3d at 648 ("The Complaint includes no information about the actual presentations made to either [plaintiff], including who made the presentation, when it took place, or with reference to what property it was made."); *Saporito,* 843 F.2d at 675 ("Although the appellants' complaint does indicate the general content of the representations ... it does not indicate who the speakers were ... or who received the information....").

At its core, plaintiffs' Amended Complaint alleges that defendants paid plaintiffs less than the prevailing wage. However, a violation of a state or federal prevailing wage statute is not a predicate act for purposes of RICO liability. Absent specific allegations of fraud or deceit, plaintiffs cannot transform their claims into a federal RICO claim through the creative invocation of the wire and mail fraud statutes. *See Young v. West*

*Coast Indus. Relations Ass'n,* 763 F.Supp. 64, 71 (D.Del.1991), *aff'd,* 961 F.2d 1570 (3d Cir.1992) (holding that "at least some sort of deception or 'other deceptive practices' should be alleged in order to warrant the intrusion of the draconian civil RICO remedies of treble damages, forfeiture and attorneys fees in what would otherwise be an ordinary breach of contract claim").

Plaintiffs' Amended Complaint fails to satisfy the pleading requirements of Rule 9(b). Ordinarily where a complaint is dismissed on Rule 9(b) grounds alone, leave to amend is granted. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1435 (3d Cir.1997). However, in this case, plaintiffs have already filed an Amended Complaint. *See Rolo,* 155 F.3d at 659 (holding that district court did not commit abuse of discretion by denying plaintiffs leave to amend when they had ample opportunity to plead their claims fully). Moreover, the record indicates that a further opportunity to amend would be futile.[2] Accordingly, plaintiffs' claims in counts I and III will be dismissed with prejudice. The Court will also dismiss plaintiffs' claims, in counts II and IV, that defendants conspired to violate RICO. In the absence of a viable claim under § 1962(c), plaintiffs cannot sustain a claim for conspiracy to violate RICO under § 1962(d).

**C. Davis–Bacon Act**

 Even if plaintiffs had met the particularity requirement of Rule 9(b), they could not base their RICO claims on defendants' alleged violation of the Davis–Bacon Act. The detailed administrative scheme created by the Act is the exclusive remedy for the alleged underpayment of wages for work performed on federal construction projects.

In *Danielsen v. Burnside–Ott Aviation Training Ctr.,* 941 F.2d 1220 (D.C.Cir.

---

**2.** In their Opposition to defendants' motion, plaintiffs claim that they "were not privy" to information such as the names and dates of construction projects. (Pls.' Opp., 5). However, it is illogical for plaintiffs to claim that they were not privy to the names and dates of construction projects on which they worked and on which their claims are based.

1991), plaintiffs, employees of Navy aircraft maintenance contractors, brought an action against the contractors under RICO, alleging that the contractors failed to pay them the prevailing wage. The Court noted that the Service Contract Act of 1965 ("SCA"), 41 U.S.C. § 351 *et seq.*, was passed to extend the labor standard protections afforded to laborers under the Davis–Bacon Act to service workers. *Id.* at 1222–23. Like the Davis–Bacon Act, the SCA set forth a detailed administrative enforcement mechanism for the protection of federal workers. The Court concluded that to allow a private suit under RICO would completely eviscerate this carefully crafted administrative scheme. The Court, quoting the Ninth Circuit's decision in *Miscellaneous Serv. Workers v. Philco–Ford Corp.,* 661 F.2d 776, 781 (9th Cir. 1981), stated:

> '[W]hat plaintiff will pursue his administrative remedies under the Act where more direct and expeditious relief is available in private suit?' How much more the case where plaintiffs couch their complaint in terms of RICO to give them, not merely a remedy equal to that provided under the SCA, but three times that remedy? How much more still where their attorneys would be extracting their fees not from their clients but from the other side?

*Id.* at 1228 (internal citations omitted).

Similar reasoning has been adopted by courts and applied to statutes other than the SCA. *See, e.g., Bodimetric Health Servs., Inc. v. Aetna Life & Casualty,* 903 F.2d 480, 486–87 (7th Cir.1990)(holding that RICO claims preempted by administrative benefits determination procedure under Social Security Act); *Norman v. Niagara Mohawk Power Corp.,* 873 F.2d 634, 637–638 (2d Cir.1989)(RICO action dismissed where Energy Reorganization Act provided exclusive remedy for aggrieved plaintiff-employees); *Bridges v. Blue Cross and Blue Shield Assoc.,* 935 F.Supp. 37, 43 (D.D.C.1996)(holding that "the detailed enforcement scheme of the [Federal Employee Health Benefits Act] leaves no room for a RICO action"); *New York Instit. of Dietetics, Inc. v. Great Lakes Higher Ed. Corp.,* No. 94 Civ. 4858, 1995 WL 562189 (S.D.N.Y. Sept. 21, 1995)(holding that conduct which would violate Title IV of the Higher Education Act of 1965 could not form the basis for a RICO claim); *Brown v. Keystone Consol. Indus., Inc.,* 680 F.Supp. 1212 (N.D.Ill. 1988)(RICO claims preempted by National Labor Relations Act).

In *Butchers' Union Local No. 498 v. SDC Inv., Inc.,* 631 F.Supp. 1001 (E.D.Cal. 1986), plaintiffs filed suit under RICO alleging that defendants hired and made unlawful payments to the organizers of their union in order to influence other employees in their right to organize and bargain collectively. The district court concluded that plaintiffs' claims under RICO, based on alleged mail fraud and wire fraud, were preempted by the Labor Management Relations Act, 29 U.S.C. § 186. The Court stated:

> Bluntly put, no matter how you cut the complaint, the only conceivable 'fraud' is the deprivation of plaintiffs' rights under the labor law. Since defendants' liability, under the mail and wire fraud statutes, if any, is wholly dependent on the labor laws, judgement of defendants' conduct ... lies exclusively with the [National Labor Relations Board].

*Id.* at 1011.

The court's reasoning in *Butchers' Union* is applicable here. The gravamen of plaintiffs' Amended Complaint is that they were paid less than the prevailing wage in violation of the Davis–Bacon Act. Accordingly, plaintiffs' sole remedy under federal law is the administrative remedy set forth at 40 U.S.C. § 276a. *See U.S. v. Double Day Office Serv., Inc.,* 121 F.3d 531, 533 (9th Cir.1997)("[A] party may not bring an action for the equivalent of SCA damages under the guise of another statute [RICO]."). Therefore, even if they were adequately pled, the Court would dismiss plaintiffs' RICO claims, set forth in counts

I and III of the Amended Complaint, to the extent that they relate to the underpayment of wages for work performed under federal construction contracts.

## V.

■■■ The Court has not addressed counts VI through X of plaintiffs' Amended Complaint. However, each of these counts asserts a claim solely grounded in state law. Once a federal court has dismissed all claims over which it has original jurisdiction, it should ordinarily decline to exercise supplemental jurisdiction over state law claims. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 195–96 (3d Cir.1976); *Foster v. Township of Hillside,* 780 F.Supp. 1026, 1047 (D.N.J.1992). Because no federal issues remain, the Court will dismiss plaintiffs' remaining state law claims without prejudice.[3]

## VI.

For the reasons set forth above, counts I through V of plaintiffs' Amended Complaint are dismissed with prejudice and Counts VI through X are dismissed without prejudice. The Court will issue an appropriate Order.

---

**3.** Along with the federal RICO laws and the Davis–Bacon Act, plaintiffs cite the Portal to Portal Pay Act, 29 U.S.C. §§ 255 and 256, and the Airport and Airway Improvement Act of 1982, 49 U.S.C. § 47112, as the basis for the Court's federal question jurisdiction in this case. The Court has already dismissed plaintiffs' claims under the RICO laws and the Davis–Bacon Act. 29 U.S.C. §§ 255 and 256 discuss the statute of limitations applicable to claims under the Fair Labor Standards Act and the Davis–Bacon Act. 49 U.S.C. § 47112 states that contracts exceeding $2,000 entered into pursuant to airport development projects are subject to the wage rate provisions of the Davis–Bacon Act. Neither statute creates a cause of action independent of the administrative remedies afforded under the Davis–Bacon Act. *See Four T's, Inc. v. Little Rock Mun. Airport Comm.,* 108 F.3d 909, 915–16 (8th Cir.1997) (holding that no private right of action exists under any of the provisions of the Airport and Airway Improvement Act). Because plaintiffs' claims do not "aris[e] under" these statutes, they cannot form the basis for federal question jurisdiction in this case. 28 U.S.C. § 1331.